## THE STEPHEN DECATUR.

(District Court, E. D. New York. April 16, 1901.)

COLLISION—TOW AND ANCHORED VESSEL—INSUFFICIENT LOOKOUT.

One of three scows in tow of a tug came in collision in the night with a schooner anchored in the neighborhood of Craven Shoal, south of the Narrows, in Lower New York Bay. The night was clear, and the schooner had two bright lights, which could be seen a long distance, but the pilot of the tug did not see them, nor the lights of another schooner anchored near, until within 200 feet. While the evidence was conflicting, the weight of it showed that the schooner was within the west anchorage grounds, and that the tug was to the westward of the channel. *Held*, that the fault for the collision must be attributed solely to the tug, by reason of her negligence in failing to sooner see the anchored vessels.

In Admiralty. Suit for collision.

Carter & Ledyard (Walter F. Taylor, of counsel), for libelants.

Foley, Wray & Taylor (Albert A. Wray, of counsel), for claimant.

THOMAS, District Judge. On the night of July 8, 1899, one of three scows in tow of the tug Stephen Decatur came in collision with the starboard bow of the schooner Sarah D. Fell, which was anchored in the neighborhood of Craven Shoal, south of the Narrows, in the Lower Bay, New York. For the injury thus done this libel was filed. The collision occurred about 2 o'clock in the morning. Craven Shoal is opposite Gravesend Bay. To the westward of a line drawn from Craven Shoal to Fort Tomkins Light, and from such shoal to the south of buoy No. 11, are the western anchorage grounds. There are also anchorage grounds on the east side of the channel, opposite Gravesend Bay. The captain of the tug states that he was accustomed to go either to the westward of the shoal, hence through the anchorage grounds, or to the eastward of the shoal, where the main part of the channel lies. He also states that he did not know that the water lying to the westward of the shoal was anchorage grounds, but assumed that they were to the eastward, in the location already stated. He states that it was the purpose of the tug at the time in question to go to the eastward of the shoal. The channel proper all lies east of Craven Shoal, and is about half a mile wide, and on each side of it the waters are devoted to anchorage purposes. The captain of the tug was not in the pilot house, and had not been from Owl's Head, which is in the neighborhood of the Bay Ridge Club house, some two miles and a half away; but the navigation was in charge of the pilot, who stated that he was steering S. ½ E., and it appears that he was on the Staten Island or west side, because the ebb tide tended to set the vessels towards the east bank. The pilot did not see the schooner, as he claims, until he was about 200 feet from her, and that he could not pass on either side, which difficulty, as he claims, was aided by the proximity of other vessels; but that if he had seen these vessels soon enough he would have had room to pass on the east side. His claim is that when he saw the schooner she was dead ahead of him, and that he thought the safest course was to port his wheel, and to try to go

to the westward. He states that he did not see the lights of the schooner Fell, or of the schooner Pierce, which was anchored near her, until he was about 200 feet away. It appears that the night was clear; that the Fell had two bright lights, one forward on the starboard forerigging, and one on the end of the spanker boom; and that they could be seen a long distance. There is no reason whatever for the failure of the pilot to see the lights of the vessel had proper watchfulness been observed. This was obvious negligence on the part of the Decatur, and all the injury must be ascribed to this negligence, unless the schooner in some way contributed.

It is urged against the schooner that she did not keep an anchor watch, which charge the evidence does not support, and that she and the Pierce anchored considerably to the eastward of Craven Shoal in the main channel. Whether this was so, and, if so, the culpability ascribable to it, is the final subject of investigation. The persons who testified on the subject for the libelants were Wood, for 26 years a Sandy Hook pilot, and for 50 years familiar with the harbor; Loveland, captain of the schooner Fell; Crowley, captain of the Pierce; and Lynch, mate of the Fell. Loveland had no precise knowledge of the locality of the anchorage, and, notwithstanding the statements to the contrary, it is believed that he left the matter of anchorage to the pilot. Crowley, whose schooner was eastward of the Fell, testified that he could see Craven Shoal buoy opposite his forerigging; that he was 200 or 300 feet away, to the northwest of it, and that the Fell was to the northwest of the Pierce, and some 300 feet away; that the Pierce, with her position unchanged, remained at anchor until morning; and that he then saw in the daylight Craven Shoal buoy 200 or 300 feet off the Pierce's starboard cathead, bearing nearly east. Lynch, the mate of the Fell, states that they anchored just below Staten Island, in the course way, upon the captain's order, and against the insistence of the pilot that they should get clear of the channel; that the Pierce was anchored between 300 and 500 feet to the eastward, so that the Fell was to the westward side of the channel, and the Pierce to the eastward side of the channel. This evidence tends to confirm the evidence of the claimant. But it appears that there is nothing to show that Lynch had any knowledge of the locality. He did not even know the points of the compass. He did not see the buoys, and the following illustrates his uncertainty and error:

"Q. Which side of the channel did you anchor in? A. A little to the westward of the course way. Q. Near any buoy there? A. There is a bell buoy there, and we were a little to the southward of the bell buoy, and there is another buoy, but I disremember. If I had a chart, I could tell you exactly where the vessel was at. About buoy 11, I think. Q. That marks the edge of the course way, doesn't it? A. Yes, sir."

Buoy 11 was far to the southward.

Reserving for the moment the statement of the pilot, attention may be given to the evidence of the claimant. Kevlin, the captain of the tug, did not come on deck until just before the collision. He testified that he looked at the range lights, and knew thereby that the Fell was in the channel. But it appears that he did not do this

until the collision was over, and he was some distance below the place thereof. He also stated that just before the collision he picked up Craven Shoal buoy with the night class. His ignorance of the westward anchorage grounds makes it very doubtful whether his observations were either correct or valuable. Kreck, the pilot of the tug, as he states, saw Craven Shoal buoy after the collision, and after the tug had drifted to the southward and had returned; that he only knew that he was east of the buoy because he said he was sailing on a course S. $\frac{1}{2}$ E. That would have been a correct course had he been in the center of the channel, but he was far to the Staten Island side, and such course might take him to the westward of the channel. One Robertson, who at the time of the collision was steward of the Fell, but left her when she came into port, states that he heard after the collision the captain and mate say that the Fell was anchored in the channel, about 30 feet to the southeast of the red buoy there; and he states that the Pierce was anchored to the eastward of the Fell, over on the east shore, some 250 or 300 feet from the Fell. Giving due weight to all the evidence appearing on the part of the claimant, the court prefers the evidence of the pilot of the Fell. He states that he gave the order to anchor, and that the captain left the matter to him; that the effect of the collision was to break the Fell loose, and drag her below Craven Shoal, so that the pilot let go of the anchor; that the second anchor held, 200 or 300 feet below Craven Shoal, and that she remained in that position until the tug took her away; that when the barges dragged him he knew that he went to the westward of Craven Shoal buoy, because he could see it. He states that he was 10 or 11 or perhaps 50 feet inside the anchorage grounds. Here is the evidence of a man who knew the locality from 50 years of experience, whose duty it was to anchor the schooner within the anchorage grounds, who has not exaggerated the distance that the vessel was within the anchorage limits, and his evidence, in connection with that of the other witnesses, which tends to aid it, is preferred by the court. Judge Brown has just decided in the case of The Municipal (D. C.) 108 Fed. 895, that, under the facts presented in that case, a vessel without the anchorage grounds was not negligent when she could have been and should have been seen by the tug which caused the collision with her. It is not necessary to make a similar finding here, but the doctrine would have much force if applied to the facts now present. The libelants should have a decree, with costs.